# UNITED STATES DISTRICT COURT
for the
**Western District of Kentucky**
**Louisville Division**

| | |
|---|---|
| Sonny Thomas )<br>    *Plaintiff* )<br>)<br>v. )<br>)<br>Equifax Information Services, LLC )<br>    *Defendant* )<br>Serve: )<br>    Corporation Service Company )<br>    421 West Main Street )<br>    Frankfort, KY 40601 )<br>)<br>Nelnet Business Solutions, Inc. )<br>    *Defendant* )<br>Serve: )<br>    CT Corporation System )<br>    306 West Main Street )<br>    Suite 512 )<br>    Frankfort, KY 40601 )<br>)<br>Trans Union, LLC )<br>    *Defendant* )<br>Serve: )<br>    The Prentice Hall Corp. System )<br>    421 West Main Street )<br>    Frankfort, KY 40601 ) | Case No. 3:19-cv-786-GNS |

## VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL
## and DEMAND FOR JURY TRIAL

### INTRODUCTION

1.   This is a complaint for damages for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2. Jurisdiction of this court arises under 28 U.S.C. § 1331, and the FCRA, 15 U.S.C. § 1681p. Venue is proper, because many of the relevant events affected and/or damaged a consumer living within Hardin County, Ky., which is located within this District.

## PARTIES

3. Plaintiff Sonny Thomas is a natural person who resides in Hardin County, Ky. Ms. Thomas is a "consumer" within the meaning of the FCRA, as defined at 15 U.S.C. § 1681a(c).

4. Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309 that is registered to do business with Kentucky Secretary of State. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

5. Defendant Nelnet Business Solutions, Inc. ("Nelnet") is a servicer and collector of student loans. Nelnet principal place of business is located at 121 S. 13th Street, Suite 100, Lincoln, NE 68508. Nelnet is a "person" and furnisher of credit information under the FCRA.

6. Defendant Trans Union, LLC is a foreign limited liability company, with its principal place of business located at 555 West Adams, Chicago, IL 60661 that has registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA.

## STATEMENT OF FACTS

7. Ms. Thomas is keenly aware of the importance of her credit score.

8. As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."

> But even if you're not in the market for a loan, good credit can have a major impact, Weston says.
>
> "Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.
>
> Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.
>
> Good credit can signify that your financial situation—and the rest of your life—is on the right track.[1]

9. Ms. Thomas regularly reviews her consumer credit reports to monitor for errors and to prevent identity theft.

10. A recent review of Ms. Thomas's credit reports uncovered several items of incorrect and inaccurate credit information, including tradelines furnished by Nelnet.

11. Nelnet was reporting negative credit information concerning two student loans that Nelnet that had been closed and transferred to "Government."

12. The student loans were transferred to the U.S. Department of Education, which is also reporting credit information for the two student loans at issue. The U.S. Department of Education is currently reporting both student loans as "Account Paid in Full; was a Collection." Consequently, the U.S. Department of Education is reporting both student loans with a $0.00 balance and as collection accounts from February 2015 through January 2017 in the payment history.

13. On her Trans Union credit report, Nelnet was reporting a $0.00 balance due, a payment history reflecting that the student loans were 120-days past due during a certain period of time before closing and transferring the student loans, and a "Pay Status" of "Account 120-days Past Due Date."

---

[1] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

14. On her Equifax credit report, Nelnet was reporting a $0.00 balance due, a payment history reflecting that the two student loans were 120-days past due during a certain period of time before closing and transferring the student loans, and a "Account Status" of "Account 120-days Past Due Date."

15. According to the Credit Reporting Resource Guide ("CRRG"), the account status for a transferred student loan should either be coded as "Account Transferred to Another Company/Servicer" or as "Student Loan—Assigned to Government."

16. "Pay Status" on a Trans Union credit report and "Account Status" on an Equifax credit report both represent the coding for "account status" per the CRRG. Further, under the CRRG, the "account status" of transferred accounts is a permanent status that is not to be updated. This means that, no matter what happens to the two student loans after transfer, the Nelnet tradelines for the student loans at issue will forever be reported with an account status of 120-days past due on Ms. Thomas's credit reports, even though she in fact paid off the two student loans in full.

17. Nelnet's reporting of the two student-loan tradelines as 120-days late is inaccurate and misleading. Further, the misreporting to the student-loan tradelines at issue with a current status of 120-days late negatively affects Ms. Thomas's credit score and her credit rating.

18. The misreporting of the account status as being currently 120-days past due on Ms. Thomas's credit report makes any delinquency appear more recent than it actually is, which in turn creates a greater negative impact on Ms. Thomas's credit score than if the account status was being reported correctly.

19. Under 20 U.S.C. § 1078-6(c), Nelnet—upon assignment, sale, or transfer of Ms. Thomas's loans—should have requested that the CRAs to "remove the record of the default from [Ms. Thomas's] credit history."

20. The credit information furnished by Nelnet is false and inaccurate. The "pay status" on her Trans Union credit report should have be reported as "Account Transferred" or as "Student Loan—Assigned to Government." The "account status" on her Equifax credit report should have be reported as "Account Transferred" or as "Student Loan—Assigned to Government."

21. Further, in compliance with federal law, Nelnet should have deleted the negative payment history and any record of default from the tradelines for the two student loans in questions.

22. Finally, under the CRRG, the Nelnet should have deleted both student-loan

tradelines from Ms. Thomas's consumer credit reports after sale or transfer of the student loans.

23. In order to correct the false and inaccurate information furnished by Nelnet on her credit reports, Ms. Thomas sent written disputes dated May 19, 2019 to Equifax and Trans Union disputing numerous false and inaccurate credit information on her consumer credit reports, including the two erroneous Nelnet student-loan tradelines.

24. Upon receipt of Ms. Thomas's dispute, Equifax and Trans Union each had an affirmative duty under 15 U.S.C. § 1681i(a)(1) to conduct a reasonable investigation of Ms. Thomas's dispute to determine the accuracy and correctness of the credit information disputed by Ms. Thomas.

25. Equifax and Trans Union failed to conduct a reasonable investigation of Ms. Thomas's disputes. In particular, both Equifax and Trans Union failed to delete the negative credit information concerning any default of the two student loans at issue per federal statute referenced above. Further, Equifax continued to report the "Account Status" of the two student loans as 120-days late. Trans Union continued to report the "Pay Status" of the two student loans as 120-days late. As explained above, per the CRRG, the account status for transferred student loans should either be reported as "Account Transferred" or as "Student Loan—Assigned to Government."

26. Equifax's and Trans Union's failure to conduct a reasonable investigation of Ms. Thomas's disputes and each's failure to correct and update Ms. Thomas's consumer credit reports in connection with the two student loans at issue furnished by Nelnet has adversely affected Ms. Thomas by allowing false, negative credit information to appear on her consumer credit report, which negatively impacts Ms. Thomas's creditworthiness and credit score and has caused her to be denied credit and has caused her a great deal of anxiety, frustration, and mental upset.

27. Upon receipt of Ms. Thomas's dispute, Equifax, Experian, and Trans Union each had an affirmative duty under 15 U.S.C. § 1681i(a)(2) to send Nelnet prompt notice of Ms. Thomas's dispute within five (5) business days of receiving each dispute.

28. Equifax violated the FCRA by failing to conduct a reasonable investigation of Ms. Thomas's disputes. After conducting its investigation of Ms. Thomas's dispute, Equifax continued to inaccurately and incorrectly report the "Account Status" of the Nelnet student loans as 120-days past due and failed to note that Ms. Thomas had disputed each of the two student-loan debts furnished by Nelnet.

29. Trans Union violated the FCRA by failing to conduct a reasonable investigation of Ms. Thomas's disputes. After conducting its investigation of Ms. Thomas's dispute, Trans Union continued to inaccurately and incorrectly report the "Account Status" of the Nelnet student loans

as 120-days past due and failed to note that Ms. Thomas had disputed each of the two student loans at issue furnished by Nelnet.

30. Equifax and Trans Union each promptly notified Nelnet of Ms. Thomas's dispute, which thereby triggered Nelnet's duty to re-investigate the two student loans at issue under 15 U.S.C. § 1681s-2(b).

31. Nelnet failed to conduct a reasonable investigation into Ms. Thomas's dispute concerning the negative credit information Nelnet is furnishing about Ms. Thomas and the two student loans at issue.

32. In particular, after conducting its investigation of Ms. Thomas's disputes, Nelnet did not delete the tradelines for the two student loans at issue as required by the CRRG.

33. Contrary to the statutory mandate of 20 U.S.C. § 1078-6(c), Nelnet continued to report credit information that reflected the default status of the two student loans at issue.

34. Next, Nelnet continued to falsely and inaccurately report the "Account Status" on Ms. Thomas's Equifax credit report and the "Pay Status" on Ms. Thomas's Trans Union credit report as 120-days late.

35. Nelnet's failure to conduct a reasonable investigation of Ms. Thomas's disputes and failure to correct and update Ms. Thomas's consumer credit report has adversely affected Ms. Thomas by allowing false, negative credit information to appear on her consumer credit report, which negatively impacts Ms. Thomas's creditworthiness and credit score and has caused her to be denied credit and has caused her a great deal of anxiety, frustration, and mental upset.

36. Nelnet violated the FCRA by failing to conduct a reasonable investigation of Ms. Thomas's disputes by **(i)** failing to remove all evidence of default from the credit history of the two student loans at issue as required by federal law; and **(ii)** failing to delete the two transferred student loans per the CRRG.

## CLAIMS FOR RELIEF

I. **Claims against Nelnet Business Solutions, Inc.**

37. The foregoing acts and omissions by Nelnet Business Solutions, Inc. constitute violations of the FCRA.

38. Nelnet violated 15 U.S.C. § 1681s-2(b). After being informed by Equifax and Trans

Union that Ms. Thomas disputed the accuracy of the information Nelnet was providing concerning Ms. Thomas and the two student loans at issue furnished by Nelnet, Nelnet willfully failed to conduct a proper investigation of Ms. Thomas's disputes filed with Equifax, Experian and Trans Union that Nelnet was furnishing false negative credit information about Ms. Thomas and the two student loans at issue.

39. Nelnet willfully failed to review all relevant information purportedly provided by Equifax, Experian, and Trans Union to Nelnet in conducting its investigation, as required by 15 U.S.C. §1681s-2(b)(B).

40. Nelnet willfully failed to direct Equifax and Trans Union to correct or delete inaccurate information about Ms. Thomas pertaining to the two student loans at issue as required by 15 U.S.C. §1681s-2(b)(C), *i.e.* Nelnet failed to **(i)** delete the tradelines for the two student loans at issue as required by the CRRG; and **(ii)** remove the record of default for each transferred loan from Ms. Thomas's credit history as required by federal law.

41. As a result of Nelnet's failure to conduct a reasonable investigation of Ms. Thomas's dispute, Ms. Thomas suffered actual damages in the form of a lowered credit score and denial of credit. He also suffered frustration, irritation, and emotional upset and distress.

42. Under the FCRA, Nelnet has a duty, in its responses to Equifax and Trans Union in connection with its investigation of Ms. Thomas's disputes, to correct the tradelines for the two student loans at issue.

43. Ms. Thomas has a private right of action to assert claims against Nelnet arising under 15 U.S.C. §1681s-2(b).

44. Nelnet is liable to Ms. Thomas for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. §1681n.

45. In the alternative, Nelnet's conduct, actions and inactions were negligent rendering Nelnet liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

**II.     Claims against Equifax Information Services, LLC**

46. The foregoing acts and omissions of Equifax Information Services, LLC constitute violations of the FCRA as set forth below:

**A.     Violation of 15 U.S.C. § 1681i(a)(1)**

47. Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation of Ms. Thomas's dispute concerning the Nelnet tradelines.

48. As a result of Equifax's failure to conduct a reasonable investigation of Ms. Thomas's dispute, Equifax continued to inaccurately report that the Account Status on the two Nelnet student-loan tradelines was 120-days past the due date and failed to remove the record default for the two Nelnet student-loan tradelines. Ms. Thomas suffered actual damages in the form of a lowered credit score and denial of credit. Ms. Thomas also suffered frustration, irritation, and emotional upset and distress.

49. Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

50. In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

**B.** **Violation of 15 U.S.C. § 1681e(b)**

51. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning the two Nelnet student-loan tradelines at issue and the accuracy of credit reports it published to its users and subscribers. In particular, Equifax falsely and inaccurately reported that the Account Status on the student loans assigned to Nelnet for purposes of collection as 120-days past due after Nelnet notified Equifax that the student loans had been closed and transferred. After being notified of the transfer, Equifax should have **(i)** reported the Account Status of the two Nelnet tradelines as "Account Transferred" or as "Student Loan—Assigned to Government;" and **(ii)** removed all record of default from the two Nelnet student-loan tradelines at issue.

52. As a result of Equifax's failure to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning the Nelnet tradelines and the accuracy of credit reports it published to its users and subscribers, Ms. Thomas suffered actual damages in the form of a lowered credit score and denial of credit. He also suffered frustration, irritation, and emotional upset and distress.

53. Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

54. In the alternative, Equifax's conduct, actions and inactions were negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### III. Claims against Trans Union, LLC

55. The foregoing acts and omissions of Trans Union, LLC constitute violations of the FCRA as set forth below:

#### A. Violation of 15 U.S.C. § 1681i(a)(1)

56. Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation of Ms. Thomas's dispute concerning the two Nelnet student-loan tradelines at issue.

57. As a result of Trans Union's failure to conduct a reasonable investigation of Ms. Thomas's dispute, Trans Union continued to inaccurately report that the Pay Status on the two Nelnet student-loan tradelines at issue was 120-days past the due date and failed to remove the record default for the two Nelnet student-loan tradelines. Ms. Thomas suffered actual damages in the form of a lowered credit score and denial of credit. Ms. Thomas also suffered frustration, irritation, and emotional upset and distress.

58. Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

59. In the alternative, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

#### B. Violation of 15 U.S.C. § 1681e(b)

60. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning the two Nelnet student-loan tradelines at issue and the accuracy of credit reports it published to its users and subscribers. In particular, Trans Union falsely and inaccurately report that the Pay Status on the two student loans assigned to Nelnet for purposes of collection as 120-days past due after Nelnet notified Trans Union that the student loans had been closed and transferred. After being notified of the transfer, Trans Union should have **(i)** reported the Pay Status of the two Nelnet student-loan tradelines at issue as "Account Transferred" or as "Student Loan—Assigned to Government;" and **(ii)** removed all record of default from the two Nelnet student-loan tradelines at issue.

61. As a result of Trans Union's failure to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports it published to its subscribers and users of its consumer reports concerning the two Nelnet student-loan tradelines at issue and the accuracy of credit reports it published to its users and subscribers, Ms. Thomas suffered actual damages in the form of a lowered credit score and denial of credit. He also suffered frustration, irritation, and emotional upset and distress.

62. Trans Union's conduct, actions and inactions were willful, rendering Trans Union

liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

63.     In the alternative, Trans Union's conduct, actions and inactions were negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Sonny Thomas requests that the Court grant her the following relief:

1. Award Plaintiff statutory damages;

2. Award Plaintiff actual damages;

3. Award Plaintiff punitive damages under 15 U.S.C. § 1681n;

4. Award Plaintiff Attorney's fees, litigation expenses and costs;

5. A trial by jury; and

6. Any other relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ James H. Lawson
**J. Hays Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue, Suite 5
Louisville, KY 40207
Tel:   (502) 473-6525
Fax:   (502) 473-6561
james@kyconsumerlaw.com

## VERIFICATION

Plaintiff Sonny Thomas declares as follows:

1. I am the Plaintiff if the present case.

2. I reside in Hardin County, KY.

3. I have personal knowledge of myself and my activities, including those set forth in this Verified Complaint. If called upon to testify, I could and would testify competently and truthfully as to the matters stated in this Verified Complaint.

4. I verify and affirm under the penalty of perjury under the laws of the United States of America and the Commonwealth of Kentucky that the factual averments in this Verified Complaint concerning myself and my activities are true and correct. 28 U.S.C. § 1746.

Executed on __Oct. 30__, 2019

_____
Sonny Thomas
*Plaintiff*